**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re:* <br><br> 11 EAST 36TH LLC, *et al.*, <br><br>     *Debtors* | Chapter 11 <br><br> Case No. 13-11506 (JLG) <br> (Jointly Administered) |
| 11 EAST 36TH LLC, <br><br>     *Plaintiff* <br><br> *v.* <br><br> FIRST CENTRAL SAVINGS BANK, *et al.*, <br><br>     *Defendants* | Adversary No. 14-01819 (JLG) |

**MEMORANDUM DECISION (I) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT AND (II) GRANTING THE PLAINTIFF'S CROSS-MOTION FOR LEAVE TO FILE THE AMENDED COMPLAINT NAMING GRIFFON V LLC AS A DEFENDANT**
*NUNC PRO TUNC*

**A P P E A R A N C E S :**

DELBELLO DONNELLAN WEINGARTEN WISE & WIEDERKEHR LLP
*Attorneys for Plaintiff 11 East 36th LLC*
One North Lexington Avenue
White Plains, New York 10601
<u>By:</u>    Jonathan S. Pasternak, Esq.
        Steven R. Schoenfeld, Esq.

BACKENROTH FRANKEL & KRINSKY LLP
*Attorneys for Defendants 11 East 36th Note Buyer LLC and Griffon V LLC*
800 Third Avenue
New York, New York 10022
<u>By:</u>    Mark A. Frankel, Esq.

      -and-

WOODS OVIATT GILMAN LLP
*Attorneys for Defendants 11 East 36th Note Buyer LLC and Griffon V LLC*
1900 Main Place Tower

350 Main Street
Buffalo, New York 14202
<u>By:</u>    William F. Savino, Esq.
        Bernard Schenkler, Esq.

**The Honorable James L. Garrity, Jr.**
**United States Bankruptcy Judge**

## <u>Introduction</u>

Before the Court is the motion of Defendants 11 East 36th Note Buyer LLC ("Note Buyer") and Griffon V LLC ("Griffon") to dismiss portions of the amended complaint in the above-captioned adversary proceeding (the "Adversary Proceeding") and the Plaintiff's cross-motion for leave to file the amended complaint naming Griffon as a defendant *nunc pro tunc*. Note Buyer and Griffon argue that the amended complaint improperly revives a cause of action against Note Buyer that was previously dismissed, amends the original complaint beyond the scope permitted by the Court's prior order granting leave to amend, and fails to state a claim upon which relief can be granted as to two newly-pled causes of action. The Plaintiff contends that it has adequately pled the new causes of action, denies that the amended complaint runs afoul of prior orders of the Court, and argues that, to the extent its amended complaint exceeds scope of the Court's prior order granting leave to amend, the Court should grant retroactive relief to permit the filing of the amended complaint.

For the reasons set forth below, the motion to dismiss is **GRANTED IN PART** and **DENIED IN PART.** The Plaintiff's cross-motion for leave to file the amended complaint against Griffon *nunc pro tunc* is **GRANTED.**

**Background**

## I.     The Claim Objections and Adversary Proceeding

On May 8, 2013, 11 East 36th LLC and Morgan Lofts LLC (collectively, the "Debtors")

filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court.

Together, the Debtors are the owners and developers of the Morgan Lofts condominium project

located on East 36th Street in New York City. The project includes 20 residential units, two

ground-floor commercial units, and one cellar unit. Each of the units was previously encumbered

by a $10,000,000 note (the "Note") and blanket mortgage (the "Mortgage") dated March 20,

2008. The Note and Mortgage were previously held by Note Buyer as the assignee of First

Central Savings Bank ("FCSB"), the original lender. The units were also encumbered by an

approximately $2,900,000 judgment (the "Judgment") previously held by Griffon as assignee of

Chinatrust Bank.

On September 12, 2013, Note Buyer and Griffon each filed proofs of claim in this case

(Claim Nos. 5 and 6, respectively) for amounts allegedly due and owing under the Note and

Judgment. As amended, Note Buyer's claim totaled $14,400,167, while Griffon's totaled

$2,970,610. On October 17, 2013, the Debtors filed objections to those claims. The Debtors

sought to reduce Note Buyer's claim by the sum of approximately $3,000,000 on account of

allegedly excessive legal and management fees, charges for disputed protective advances and

overstated interest charges, including charges for default interest. (*See Motion Objecting to

Claim 5* (the "Note Buyer Claim Objection") [ECF 43[1]].) The Debtors also challenged

approximately $250,000 of Griffon's claim on account of disputed protective advances, interest

---

[1]   References to "ECF" refer to the electronic docket maintained in the Debtors' above-captioned bankruptcy case,
No. 13-11506 (JLG). References to "AP ECF" refer to the docket maintained in the above-captioned adversary
proceeding, No. 14-01819 (JLG).

on those advances and excessive legal fees. (*See Motion Objecting to Claim 6* (the "Griffon Claim Objection" [ECF 44], collectively with the Note Buyer Claim Objection, the "Claim Objections").) On December 31, 2013, Note Buyer and Griffon filed a joint opposition to the Claim Objections.

On February 7, 2014, while the Claim Objections were pending, Debtor 11 East 36th LLC (the "Plaintiff") filed a complaint against FCSB, Note Buyer, and Mission Capital Advisors LLC ("Mission Capital") initiating this Adversary Proceeding. (*See Complaint* (the "Complaint") [AP ECF 1].) In substance, the Plaintiff contended that FCSB breached the Note and Mortgage by unjustifiably withholding consent to the Plaintiff's proposed sale of the two ground-floor condominium units in October 2011.

According to the Complaint, at the same time the Plaintiff was seeking approval of the sale of the ground-floor units to a third party, FCSB was under pressure from its regulators to improve its capital base. As a result, FCSB had been attempting to sell off a pool of its loans, including the Note. If FCSB had allowed the Plaintiff's proposed sale to go through, the Plaintiff would have been able to pay down approximately 45% of the outstanding balance of the Note, hurting FCSB's marketing efforts. Accordingly, the Plaintiff alleges that FCSB "manufactured, arranged, and declared an artificial default" as an excuse to refuse the sale. (Compl. ¶ 41.) FCSB alleged that the Plaintiff had failed to pay real estate taxes, although it did not declare the Note in default and refused to inform the Plaintiff of the amount of the alleged default. FCSB deliberately kept the Plaintiff "in the dark" about the claimed default in order to prevent the Plaintiff from curing it. (*Id.* ¶ 28.) As a result, any purchaser of the loan portfolio from FCSB could immediately declare the Note in default – based on the circumstances created by FCSB – and begin collecting interest at the 24% default rate.

4

As originally pled, the Complaint contains five causes of action:

- Count 1 (against FCSB): Breach of contract;

- Count 2 (against FCSB): Breach of the implied covenant of good faith and fair dealing;

- Count 3 (against FCSB and Mission Capital): Fraud;

- Count 4 (against all Defendants): Declaratory judgment that, "as an assignee, Note Buyer 'stands in the shoes' of the assignor, FCSB," and "is also liable for the damages for the wrongful acts described [in the Complaint]"; and

- Count 5 (against all Defendants): Declaratory judgment that the Plaintiff remains the rightful owner of the two ground-floor commercial condominium units and that, to the extent those units had been sold, "the buyer's ownership or possession . . . is subject to liability, and to all of the Plaintiff's defenses, as a result of the wrongful acts described [in the Complaint]."

## II.    The First Motion to Dismiss the Complaint

On March 28, 2014, FCSB, Note Buyer, and Mission Capital each moved to dismiss the Complaint (collectively, the "First Motion") [AP ECF 8-11]. The Defendants challenged the legal sufficiency of the pleadings under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") and, in addition, contested the factual underpinnings of the Complaint. As relevant here, Note Buyer sought dismissal on the grounds that: (1) the Plaintiff had failed to satisfy the necessary conditions precedent to permit the sale of the two ground-floor condominium units in 2011, (2) the Plaintiff had, in fact, been in default of the Note at the time FCSB refused to consent to the sale; and (3) to the extent the Plaintiff sought to assert claims against Note Buyer in its capacity as assignee, those claims should fail to the same extent the claims fail against FCSB.

Prior to the hearing on the First Motion, the Plaintiff agreed to dismiss Counts 3 and 5 of the Complaint (fraud and one of the two declaratory judgment claims, respectively), including all

claims against Mission Capital. After hearing argument, the Court (Grossman, J.)[2] denied the

First Motion. (*See Memorandum Decision* (the "June 26 Decision") [AP ECF 21].[3]) As to the

Defendants' arguments that the Plaintiff had not satisfied the conditions precedent to permit the

sale and was actually in default of the Note, the Court held that the Plaintiff's version of events

as pled in the Complaint was "plausible" and stated that it would not "choose between the

version of events as offered by the [Plaintiff] and the version as offered by the Defendants." (*Id.*

at 8.) Accordingly, the Court held that Counts 1 and 2 of the Complaint properly pled claims

against FCSB for breach of contract and breach of the implied covenant of good faith and fair

dealing, respectively. (*Id.* at 6-11.)

The Court next turned to Count 4 of the Complaint. Although Count 4 was denominated

as a declaratory judgment action, in fact it sought "to hold Note Buyer liable on a contractual

basis as purchaser and assignee of the Note and Mortgage." (*Id.* at 12 (citation omitted).) The

Court held that Count 4 stated a claim for relief against Note Buyer:

> The Court has found . . . that the [Plaintiff] has adequately pled counts 1 and 2
> asserting claims for breach of contract and breach of the implied covenant of good
> faith and fair dealing against FCSB. To the extent that Note Buyer stands in
> FCSB's shoes as assignee of the Note and Mortgage Agreement, the [Plaintiff]
> has also adequately pled count 4 on a contractual theory only. Given that the
> requirement that the complaint need only plead a "plausible entitlement to relief"
> to survive a motion to dismiss, the [Plaintiff] need not re-plead count 4 as it
> adequately pleads a contractual claim against Note Buyer as assignee of the
> [N]ote and Mortgage.

---

[2]   When the Debtors' bankruptcy case was filed in May 2013, it was assigned to the Honorable James M. Peck.
After Judge Peck's retirement effective January 31, 2014, the case was temporarily reassigned to the Honorable
Robert E. Grossman, sitting by designation in the Southern District of New York pursuant to an order signed on
January 6, 2014 by the Honorable Robert A. Katzmann, Chief Circuit Judge for the Second Circuit Court of
Appeals. The Adversary Proceeding was assigned to Judge Grossman when it was filed on February 7, 2014, who
presided over it until it was reassigned to the undersigned on February 18, 2015.

[3]   *11 East 36th LLC v. First Central Savings Bank (In re 11 East 36th LLC)*, No. 14-01819 (RG), 2014 WL
2903660 (Bankr. S.D.N.Y. June 26, 2014).

(*Id.*) In its order denying the First Motion, the Court stated, in pertinent part, that "the Motions

are DENIED as to counts 1, 2 and 4 of the Complaint." (*Order Denying Defendants' Motions to

Dismiss* (the "First Denial Order") [AP ECF 22].)

### III.    The Refinancing Transaction

In mid-2014, after the Court denied the First Motion, the Debtors obtained a commitment

from Madison Realty Capital ("Madison") for Madison to provide postpetition, debtor-in-

possession financing (the "DIP Financing") that they could use to refinance the Note and

Judgment. By motion dated June 25, 2014, the Debtors sought authorization to close on the DIP

Financing. (*See Debtor's [sic] Motion for Order Authorizing Debtors to Obtain Postpetition

Financing and Granting Senior Security Interests and Superpriority Administrative Expense

Status Pursuant to 11 U.S.C. § 364(d)* (the "Financing Motion") [ECF 124].)

In connection with the request for DIP Financing, the Debtors initially sought to borrow

only enough funds to pay off the undisputed portion of the Note and Judgment, with a provision

for an additional $6,500,000 to be advanced by Madison "upon the settlement or disposition of"

the disputed amounts "in an amount equal to whatever amount is required to be paid on account

of" the dispute. (Loan Commitment Letter dated June 25, 2014 [ECF 124-1].) The proposal was

later revised to permit the Debtors to borrow up to $18,300,000, which would permit the

payment in full of the disputed and undisputed portions of the Note and Judgment. (*See* Loan

Commitment Letter dated July 24, 2014 [ECF 144-2].) However, since the Claim Objections

were still pending, the Debtors sought to estimate the allowed amounts of the Note and Judgment

and to preserve the objections by requiring Note Buyer and Griffon to escrow sufficient funds

from the payoff to cover the disputed portions of their claims to the extent the Claim Objections

were ultimately successful. (*See Debtor's [sic] (1) Estimation of Amount 11 East 36th Note*

*Buyer LLC and Griffon V LLC Should Be Entitled to Credit Bid . . . and (2) Request to Require*

*Secured Creditors to Hold Disputed Amounts of Claim in Escrow Pending Further*

*Determination by the Bankruptcy Court* [ECF 141].)[4]

At a hearing on August 5, 2014, the Court estimated the allowed amount of Note Buyer

and Griffon's claims to be $15,189,167 – the full amount that had been claimed – and rejected

the Debtors' request to require Note Buyer and Griffon to escrow the disputed portion. However,

the Court stressed that the estimation was "not dispositive of any of the issues raised in the

[Adversary Proceeding] at all. Those claims survive, the [Plaintiff] can bring them [as Note

Buyer] will still be here as a party in that lawsuit . . . ." (Aug. 5, 2014 Hr'g Tr. 25:8-11.) The

Court also observed that the Note Buyer Claim Objection was predicated on the same set of facts

as the Adversary Proceeding.[5]

By order dated August 6, 2014, the Court approved the Financing Motion. (*See Final*

*Order Authorizing Debtors to Obtain Postpetition Financing and Granting Senior Security*

*Interests and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. § 364(d) and*

*Providing Related Relief* (the "Financing Order") [ECF 159].) As relevant here, the Financing

Order directs that Note Buyer and Griffon be paid the sum of $15,189,167, "less credit for rents

---

[4]  Note Buyer and Griffon had previously filed a motion to estimate their own claims. (*See Motion to Estimate Claims for Plan Purposes* [ECF 82].)

[5]  In pertinent part, the Court stated:

> [W]hat the [Debtors] ha[ve] is a claims objection. They have a claims objection and they have an adversary basically. [The] adversary is predicated on . . . lender liability causes of action. The claims objection is basically predicated on the same facts, that [the Debtors] object to the amount of the secured creditors' claim because but for their conduct that claim would be less. Where I'm going to come out is that [Note Buyer and Griffon] are going to have an allowed claim . . . and [the Debtors will] have to pay off . . . [the full amount of the Note and Judgment]. That preserves [the Debtors'] right to sue them . . . .

(Aug. 5, 2014 Hr'g Tr. 14:6-21.)

8

collected in July and August 2014 plus expenses, together with final legal/professional fees." (*Id.* ¶ 26.) The order also directs Note Buyer and Griffon "to deliver at closing . . . satisfactions of mortgage and judgment in recordable form, as applicable, or assignment of same in recordable form." (*Id.* ¶ 28.)

At the closing, the Debtors requested that Note Buyer and Griffon agree to assign the Note, Mortgage, and Judgment to Madison, rather than accepting satisfactions of their existing claims and liens. Note Buyer and Griffon agreed to do so, and each executed and delivered assignments to Madison's nominee, 11 East 36th Street 1 LLC.

## IV.    The Second Motion to Dismiss the Complaint

On September 9, 2014, Note Buyer and Griffon jointly moved pursuant to FRCP 54(b)[6] to reconsider the First Denial Order and to dismiss the Adversary Proceeding against Note Buyer and the Claim Objections against both of them. (*See Motion to Dismiss Adversary Proceeding and Objections to Claim* (the "Second Motion") [ECF 171] [AP ECF 29].) According to the Second Motion, the Complaint against Note Buyer did not allege any independent wrongdoing by Note Buyer. Instead, the Complaint sought to hold Note Buyer liable solely as the assignee of FCSB. Since Note Buyer's position as assignee of FCSB was assigned to Madison's nominee in connection with the refinancing transaction, Note Buyer argued that Madison – and not Note Buyer – should be held accountable for FCSB's conduct. In addition, both Note Buyer and

---

[6]    FRCP 54(b) provides, in pertinent part:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). Bankruptcy Rule 7054(a) makes FRCP 54(b) applicable in this Adversary Proceeding. *See* Fed. R. Bankr. P. 9054(a).

Griffon argued that the Debtors had no right to recover from them any amounts that Madison had

paid to purchase their claims; to the extent their claims were overstated or otherwise

unenforceable, this would simply reduce the Debtors' liability to Madison as assignee. Based on

this "new evidence" – to wit, the assignment of Note Buyer and Griffon's claims to

Madison – Note Buyer and Griffon asked the Court to reconsider the June 26 Decision and the

First Denial Order and to dismiss both the Adversary Proceeding and the Claim Objections. (*See*

Second Motion ¶ 37.)

    At a hearing on December 9, 2014, the Court denied the Second Motion, declining to

"revisit[ ]" the First Denial Order. (Dec. 9, 2014 Hr'g Tr. 28:16.)[7] However, the Court

questioned the procedural status of the Note Buyer Claim Objection given that Note Buyer's

claim had been purchased by Madison and Note Buyer was no longer a creditor of the Debtors.

(*See id.* at 35:4-5 ("[I]f [Note Buyer] doesn't have a claim, can we get rid of the claims

objection?"); 35:17-18 ("I don't think [the Court] can have a claims objection where there's no

claim."); 36:11 ("[The Court] can't have a claims objection without a claim.").) Accordingly, the

Court granted the Plaintiff leave to amend the Complaint and directed the Debtors to "withdraw

the claim objection and add that into the complaint."[8] (*Id.* at 36:14-15.) In response to Note

---

[7]  In pertinent part, the Court stated:

> Well I think that on a motion to dismiss there has to be no plausible case . . . . [The Plaintiff's]
> argument is . . . that the conduct of the banks, lenders . . . rises to the level of a contractual breach
> of a duty that was owed to the borrower. Now I can tell you that, especially in the Second Circuit,
> finding the duty owed to a borrower is extraordinarily difficult and finding damages for a breach
> of that are equally extraordinarily difficult. But what's in front of me is not a summary judgment
> motion. What's in front of me is a motion to dismiss . . . . I think there's a – there is a set of facts
> which is plausible . . . that the [Plaintiff] does have a case to say somebody did something to
> me . . . . So I'm going to deny the motion to dismiss . . . .

(Dec. 9, 2014 Hr'g Tr. 32:20-33:25.)

[8]  Specifically, the Court directed the Debtors to "wrap [the Note Buyer Claim Objection] up in the complaint,
either for disgorgement or damages or someplace." (Dec. 9, 2014 Hr'g Tr. 35:15-16.) The Court noted that the
Plaintiff's claims arose from "improper legal fees . . . , accelerating [the debt] too soon, default [interest]," which

Buyer's concern that Plaintiff might amend the Complaint to assert claims that did not arise from

FCSB's alleged misconduct, the Court reiterated that the amendment "is going to emanate from

the . . . lender liability case [*i.e.*, this Adversary Proceeding]." (*Id.* at 37:6-8.)

On December 22, 2014, the Court entered an order (the "December 22 Order") denying

the Second Motion and granting the Plaintiff leave to file an amended complaint. (*See Order*

*(1) Denying 11 East 36th Note Buyer LLC's Motion to Dismiss Adversary Proceeding,*

*(2) Deeming Debtors' Objections to Claim of 11 East 36th Note Buyer Withdrawn, (3) Granting*

*Leave to Plaintiff to Amend Complaint to Add Claims Asserted in Claim Objection, and*

*(4) Providing for Related Relief* (the "Second Denial Order") [AP ECF 35].) Among other

things, the Second Denial Order directs that the Note Buyer Claim Objection is deemed

withdrawn "subject to the [Plaintiff]'s right to update and incorporate the Claims Objection into

Plaintiff's Adversary Proceeding Complaint." (*Id.* at 2.) It also grants the Plaintiff "leave to

amend the Adversary Proceeding Complaint for the sole purpose of updating and incorporating

the Claims Objection into the Complaint." (*Id.*) The order does not make any reference to the

Griffon Claim Objection.

## V.    **The Amended Complaint**

On January 31, 2015, the Plaintiff filed its amended complaint in the Adversary

Proceeding. (*See Amended Complaint* (the "Amended Complaint") [AP ECF 36].) The Amended

Complaint names Griffon as an additional defendant and the underlying allegations therein

essentially track those set forth in the Complaint, except that the Plaintiff added allegations to

support its contention that FCSB, Note Buyer, and/or Griffon collected excessive interest from

---

could be "wrap[ped] into damages. So it should all be in a complaint [that Note Buyer] can respond to and we can try." (*Id.* at 36:8-11.)

the Plaintiff totaling $5,978,168.09, (Am. Compl. ¶¶ 30-35), and other fees and charges totaling

$1,146,724.98, (*id.* ¶¶ 36-40). The Amended Complaint contains five causes of action:

- Amended Count 1 (against FCSB and Note Buyer): Breach of contract;

- Amended Count 2 (against FCSB and Note Buyer): Breach of the implied
  covenant of good faith and fair dealing;

- Amended Count 3 (against all Defendants): Declaratory judgment that, "as
  an assignee," Note Buyer "'stands in the shoes' of the assignor, FCSB,"
  and "is also liable for the damages for the wrongful acts described [in the
  Amended Complaint]";

- Amended Count 4 (against Note Buyer and Griffon): Objection to claims;
  and

- Amended Count 5 (against Note Buyer and Griffon): Disgorgement and
  turnover of property of the estate.

## VI.   The Motion to Dismiss the Amended Complaint

On March 2, 2015, Note Buyer and Griffon moved to dismiss the Amended Complaint.

(*See Motion to Dismiss Amended Complaint* (the "Third Motion") [AP ECF 39].) The Third

Motion makes essentially three arguments in favor of dismissal. *First*, Note Buyer contends that

Amended Counts 2 and 3 purport to hold it liable under the theory of breach of the implied

covenant of good faith and fair dealing, which was implicitly dismissed by the June 26 Decision.

Note Buyer argues that its alleged liability for damages was limited by the June 26 Decision to a

claim for breach of contract as assignee of FCSB. Accordingly, Note Buyer objects to the

Plaintiff's assertion of that claim against Note Buyer in Amended Count 2 and its attempt to hold

Note Buyer liable for all of the wrongful acts of FCSB in Amended Count 3. *Second*, both Note

Buyer and Griffon contend that Amended Counts 4 and 5 improperly assert a claim objection

and affirmative causes of action for disgorgement and turnover that should have been asserted as

damages resulting from the Plaintiff's lender liability claim. *Third* and finally, Griffon contends

that the Plaintiff improperly joined it as a defendant without leave and despite the fact that it is

not a party to the lender liability causes of action.

### VII.    The Opposition to the Third Motion and Cross-Motion for Leave to File the Amended Complaint Against Griffon *Nunc Pro Tunc*

On April 8, 2015, the Plaintiff filed opposition to the Third Motion and a cross-motion

for leave to file the Amended Complaint against Griffon *nunc pro tunc*. (*See Plaintiff Debtor's*

*Memorandum of Law in Opposition to 11 East 36 [sic] Note Buyer LLC's and Griffon V LLC's*

*Motion to Dismiss the Amended Complaint and in Support of the Cross-Motion for Leave to File*

*the Amended Complaint Nunc Pro Tunc to the Extent Such Leave Was Not Already Granted, and*

*Cross-Motion for Such Relief* (the "Opposition") [AP ECF 44].) As to Amended Counts 2 and 3,

the Plaintiff argues that neither the June 26 Decision nor the First Denial Order limited the

Plaintiff's claims against Note Buyer for breach of the implied covenant of good faith and fair

dealing. As to Amended Counts 4 and 5, the Plaintiff argues that the claims are properly pled and

were asserted pursuant to the Court's direction that the Claim Objections be incorporated into the

Adversary Proceeding. Finally, to the extent leave was not previously granted to join Griffon as a

defendant, the Plaintiff argues that this was the result of an oversight and requests leave to file

the Amended Complaint against Griffon *nunc pro tunc*.

On April 10, 2015, Note Buyer and Griffon filed a reply to the Opposition. (*See Reply in*

*Further Support of Motion to Dismiss Amended Complaint* (the "Reply") [AP ECF 46].) The

Reply reasserts Note Buyer and Griffon's arguments that (1) the Plaintiff's claim for breach of

the implied covenant of good faith and fair dealing was dismissed by the June 26 Decision and is

now barred by the law of the case doctrine, and (2) Amended Counts 4 and 5 fail to state a claim

upon which relief can be granted. Griffon also argues that leave to join it as a defendant should

be denied because it has been prejudiced by the Plaintiff's delay.

13

## Discussion

## I.    The Plaintiff's Claims Against Note Buyer in Amended Counts 2 and 3 Were Not Dismissed by the June 26 Decision

According to Note Buyer, the "law of the case" mandates dismissal of Amended Counts 2 and 3 against it. "Under the law of the case doctrine, a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation." *Liona Corp., Inc. v. PCH Assocs. (In re PCH Assocs.)*, 949 F.2d 585, 592 (2d Cir. 1991). Law of the case "applies both that that which is expressly decided as well as to everything decided by necessary implication." *U.S. v. Yonkers Bd. of Educ.*, 856 F.2d 7, 11 (2d Cir. 1988) (quoting *Fogel v. Chestnutt*, 668 F.2d 100, 108 (2d Cir. 1981) (alterations and internal quotation marks omitted)). The doctrine "is in effect a reflection of the general policy encouraging judicial economy and finality." *In re Northern Telecom Ltd. Securities Litig.*, 42 F. Supp. 2d 234, 239 (S.D.N.Y. 1998). "[A]lthough the law of the case doctrine discourages the reconsideration of matters previously decided absent cogent or compelling reasons, the doctrine is discretionary and does not constitute a limitation on the court's power." *Weitzman v. Stein*, 908 F. Supp. 187, 193 (S.D.N.Y. 1995) (citations and internal quotation marks omitted). Stated succinctly, the doctrine posits that, "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964).

As noted above, Note Buyer argues that the Court previously limited its potential liability to the alleged breach of contract. Thus, Note Buyer concedes that Amended Count 1 "is arguably permissible and follows [from the June 26 Decision]." (Third Motion ¶ 38.) However, Note Buyer argues that the Plaintiff's claim for breach of the implied covenant of good faith and fair dealing in Amended Count 2 "contradicts" the June 26 Decision since "[a] claim for relief based

on breach of [the] implied covenant of good faith and fair dealing was limited by the [June 26 Decision] to *FCSB only*." (*Id.* at ¶ 39 (emphasis original).) In support of its argument, Note Buyer relies on language in the June 26 Decision that the Plaintiff had properly pled a claim against Note Buyer "on a contractual theory only." (June 26 Decision 12.) Note Buyer argues that this language endorses the Plaintiff's "contractual theory" (*i.e.*, its breach of contract claim) while implicitly dismissing its breach of the implied covenant claim. Accordingly, Note Buyer requests dismissal of Amended Count 2 (including Paragraph B of the demand for judgment) because it impermissibly exceeds the scope of the June 26 Decision.

Similarly, Note Buyer requests dismissal of Amended Count 3, which seeks relief from Note Buyer as assignee of FCSB and alleges that Note Buyer "is also liable for the damages for the wrongful acts described [in the Amended Complaint]." (Am. Compl. ¶ 66.) Note Buyer complains that Amended Count 3 constitutes "a back-door to demand more relief than was allowed by [the June 26 Decision] – which limited any relief against Note Buyer to breach of contract." (Third Motion ¶ 41.) Likewise, Note Buyer complains about Paragraph C of the Plaintiff's demand for judgment, which seeks relief against FCSB and Note Buyer for "all damages caused by their fraudulent actions and omissions." (Am. Compl. ¶ C.) According to Note Buyer, the demand exceeds not only the June 26 Decision, but also the Plaintiff's agreement to voluntarily dismiss its fraud claim from the Complaint.[9]

The Court disagrees with Note Buyer that Amended Counts 2 or 3 were previously dismissed or are otherwise barred by the law of the case doctrine. Neither the June 26 Decision nor the First Denial Order expressly or implicitly dismissed the Plaintiff's claim for breach of the

---

[9]    The Plaintiff's fraud claim, which was Count 3 of the Complaint, was dismissed by the First Denial Order. (*See* First Denial Order 2 ("Ordered that counts 3 and 5 of the Complaint are hereby dismissed on consent of the [Plaintiff]."))

implied covenant of good faith and fair dealing against Note Buyer. The June 26 Decision is not

ambiguous. In addressing Note Buyer's argument in support of dismissal, the Court stated that

"[Note Buyer's] argument fails." (June 26 Decision 12.) The First Denial Order states simply

that the First Motion is "DENIED as to counts 1, 2 and 4 of the Complaint." (First Denial Order

2.) Nowhere did the Court parse out the breach of the implied covenant claim in order to dismiss

it in part solely as against Note Buyer.

As noted, Note Buyer's law of the case argument relies primarily on the language in the

June 26 Decision that the Plaintiff had pled a cause of action against Note Buyer "on a

contractual theory only." (June 26 Decision 12.) According to Note Buyer, the "contractual

theory" referred to must have been the Plaintiff's breach of contract claim, not its breach of the

implied covenant claim. But this is not so. In New York, a breach of the implied covenant claim

*is* a contractual claim. *See Smile Train, Inc. v. Ferris Consulting Corp.*, 986 N.Y.S.2d 473, 475

(1st Dep't 2014) ("[B]reach of the implied covenant of good faith and fair dealing is not a tort;

rather, it is a contract claim."). Thus, the statement in the June 26 Decision that the Plaintiff had

"adequately ple[d] a contractual claim against Note Buyer as assignee of the [N]ote and

Mortgage," (June 26 Decision 12), supports the Plaintiff's argument that the June 26 Decision

did not dismiss *either* the breach of contract or breach of the implied covenant claims. The

Plaintiff's clarification in the Amended Complaint by expressly naming Note Buyer as a

defendant in Amended Counts 2 and 3 does not provide any basis for dismissal.

Note Buyer's additional argument that Paragraph C of the Plaintiff's demand for

judgment impermissibly revives its previously dismissed fraud claim also fails. Paragraph C

refers to FCSB and Note Buyer's "fraudulent actions and omissions." (*See* Am. Compl. ¶ C.)

After reviewing the Amended Complaint, the Court is satisfied that this language merely

16

constitutes the Plaintiff's attempt to characterize conduct described in the Amended Complaint,

and does not revive or constitute a separate fraud claim under New York law.

Accordingly, the Third Motion is denied in its entirety as to Amended Counts 2 and 3.

## II.   **Amended Count 4 – Not Amended Count 5 – Properly Incorporates the Note Buyer Claim Objection into the Adversary Proceeding**

### A.   **Amended Count 4 Will Not Be Dismissed**

In Amended Count 4 – which is asserted against both Note Buyer and Griffon and is

captioned as an "objection to claims" – the Plaintiff "objects to the Note Buyer Claim and

Griffon Claim and seeks to reduce them by the aggregate sum of no less than $7,260,892 with

such reductions to be apportioned between each claim as appropriate by the Bankruptcy Court."

(Am. Compl. ¶ 69.) The Amended Complaint alleges:

> Note Buyer and/or Griffon have improperly, excessively, unreasonably and/or
> unlawfully charged approximately $7,260,892.89 in unlawful and improper
> interest, legal fees, protective advances and other related charges which were
> either attributable to FCSB's breach of contract and unfair dealing and/or sought
> by Note Buyer and Griffon without reasonableness, adequate explanation,
> accounting or supporting documentation or other evidence.

(*Id.* ¶ 68.)

Note Buyer and Griffon argue that Amended Count 4 must be dismissed because they are

no longer "creditors" and do not hold "claims" since the assignment of their claims to Madison

as part of the refinancing transaction. (*See* Third Motion ¶¶ 44-45.) They contend that the lender

liability claims that initially formed the basis of the Complaint are common-law claims that,

pursuant to *Stern v. Marshall*, 564 U.S. ___, 131 S. Ct. 2594 (2011), cannot be finally

adjudicated in this Court. (*Id.* ¶¶ 48-51.) According to the Third Motion, the Plaintiff's use of the

phrase "objection to claims" not only "improperly attempts to implicate bankruptcy jurisdiction

where there is none," (Third Motion ¶ 51), but it also violates the law of the case by expanding the Plaintiff's claims beyond common-law lender liability.

The Court finds no merit to those contentions. Labeling Amended Count 4 as an "objection to claims" signifies that the allegations in that count derive from the Claim Objections. It is irrelevant that Note Buyer and Griffon no longer hold claims against the estate. The Court is satisfied that, at least as to Note Buyer, Amended Count 4 represents the Plaintiff's attempt to "wrap" the Claim Objections into the Adversary Proceeding as its claim for "damages," as instructed by the Court at the December 9, 2014 hearing. (*See* Dec. 9, 2014 Hr'g Tr. 35:15-16.) Thus, to the extent of the Plaintiff's claims against Note Buyer, the Court may construe Amended Count 4 as a claim for additional damages arising out of Amended Counts 1, 2, and 3. *See ACR Sys., Inc. v. Woori Bank*, No. 14 Civ. 2817 (JFK), 2015 WL 1332337, at *3 (S.D.N.Y. Mar. 25, 2015) (construing two "unidentified causes of action" as claims for damages arising out of another pled cause of action). The fact that the Court may not have the power to finally resolve the Plaintiff's lender liability causes of action under *Stern* has no bearing on whether Amended Count 4 adequately pleads a cause of action for damages. *See Wagner v. Pruett (In re Vaughan Co.)*, 477 B.R. 206, 225 (Bankr. D.N.M. 2012) ("[A]ny jurisdictional defect implicated by *Stern v. Marshall* cannot serve as grounds for dismissal . . . .").

The additional argument in the Third Motion that the law of the case doctrine bars Amended Count 4 fails as well. The Court never dismissed the Claim Objections or barred the Plaintiff from asserting them in the Adversary Proceeding; in fact, the exact opposite is true. The Second Denial Order specifically authorized the Plaintiff to incorporate the Note Buyer Claim Objection into the Amended Complaint.

The Court likewise denies the motion as to Griffon – which is not a defendant in Amended Counts 1, 2, or 3. As set forth below, the Court finds that incorporating the Griffon Claim Objection into the Adversary Proceeding is appropriate, and will grant the Plaintiff leave to do so *nunc pro tunc*. As regards Amended Count 4, the Court is empowered to, *inter alia*, "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).[10] The facts alleged by the Plaintiff in Amended Count 4 with respect to both Note Buyer and Griffon "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Accordingly, independent of the fact that the Court can construe Amended Count 4 as to Note Buyer as an additional claim for damages arising out of Amended Counts 1, 2, and 3, the Court declines to dismiss the claim as against either Note Buyer or Griffon.

Finally, Note Buyer and Griffon complain that the Plaintiff has combined its separate damages claims against them into a single lump-sum claim for damages totaling $7,260,892. (*See* Am. Compl. ¶ 69 ("Plaintiff hereby objects to the Note Buyer Claim and the Griffon Claim and seeks to reduce them by the aggregate sum of no less than $7,260,892, with such reductions to be apportioned between each claim as appropriate by the Bankruptcy Code.")) Note Buyer and Griffon argue that combining the Plaintiff's objections to those claims is inappropriate. *See Bd.*

---

[10] By citing to the Declaratory Judgment Act, the Court does not mean to imply that Amended Count 4 is limited to a claim declaring the rights of the parties. The Plaintiff is not required to properly plead all of the legal theories under which it may be entitled to relief. *See, e.g.*, *Newman v. Silver*, 713 F.2d 14, 15 n.1 (2d Cir. 1983) (noting that federal pleading provides for "statement of claim, not . . . legal theories").

*of Educ. v. Sargent, Webster, Crenshaw & Folley*, 71 N.Y.2d 21, 28 (1987) ("[A party to a contract is] entitled to expect at the time it contract[s] with [the counterparty] that is liability [will] be determined by its own contractual undertaking. [That party] should not [during litigation] be confronted with potential liability based on the promise made by [another party] in its separate contract . . . .").

The Court disagrees. Rather than dismissal under FRCP 12(b)(6), what Note Buyer and Griffon are in fact seeking is a clarification – or a "more definite statement" under FRCP 12(e)[11] – as to the amount of each of the their claims the Plaintiff is objecting to. That information will be available to the Defendants in discovery and need not be provided at the pleading stage. *See, e.g., In re European Rail Pass Antitrust Litig.*, 166 F. Supp. 2d 836, 844 (S.D.N.Y. 2001) ("[A]llegations that are unclear due to a lack of specificity are more appropriately clarified by discovery rather than by an order for a more definite statement." (citation and internal quotation marks omitted)).

Accordingly, the Third Motion is denied in its entirety as to Amended Count 4.

### B.      Amended Count 5 Will Be Dismissed for Failure to State a Claim

Note Buyer and Griffon next attack Amended Count 5, which alleges that they "improperly and unlawfully received and/or were unjustly enriched" in connection with the refinancing and seeks as a remedy "disgorgement and turnover of property of the estate." (Am. Compl. ¶¶ 70-72). According to the Third Motion, Amended Count 5 should be dismissed under

---

[11] FRCP 12(e) states in pertinent part that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Bankruptcy Rule 7012(b) makes FRCP 12(e) applicable in this Adversary Proceeding. *See* Fed. R. Bankr. P. 7012(b).

FRCP 12(b)(6)[12] because the Plaintiff has failed to state claims for disgorgement, turnover, and unjust enrichment assuming the truth of the allegations in the Complaint. The Court agrees.

In order to survive a motion to dismiss under FRCP 12(b)(6), a complaint must allege sufficient facts "to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility exists when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion under FRCP 12(b)(6), courts must "tak[e] the factual allegations of the complaint to be true and draw[ ] all reasonable inferences in the plaintiff's favor." *Warren v. Colvin*, 744 F.3d 841, 843 (2d Cir. 2014).

As to the Plaintiff's disgorgement theory, Amended Count 5 purports to state a claim "for the recovery of money received by Note Buyer and Griffon that they are not entitled to retain." (Opp'n ¶ 65.) The claim is based on allegations that Note Buyer and Griffon have "been overpaid monies to which [they were] not entitled under law." (*Id.* ¶ 66.) In New York, disgorgement is an equitable remedy that "aims to deter wrongdoing by preventing the wrongdoer from retaining ill-gotten gains from fraudulent conduct." *People v. Ernst & Young, LLP*, 980 N.Y.S.2d 456, 457 (1st Dep't 2014). Assuming that the facts alleged by the Plaintiff are true, the allegations in Count 5 fail to properly set forth a cause of action for disgorgement. *See Piccarreto v. Mura*, 970 N.Y.S.2d 408, 426 (Sup. Ct. 2013) ("[D]isgorgement may not stand as an independent cause of action as disgorgement of payments is really a damage claim." (citation omitted); *see also Access Point Med., LLC v. Mandell*, 963 N.Y.S.2d 44, 47 (1st Dep't

---

[12] FRCP 12(b)(6) permits a party to move for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Bankruptcy Rule 7012(b) makes FRCP 12(b)(6) applicable in this Adversary Proceeding. *See* Fed. R. Bankr. P. 7012(b).

2013) ("[P]laintiffs' demand . . . is, essentially, a claim for money damages. The calculated use of the term 'disgorgement' . . . should not be permitted to distort the nature of the claim . . . ."). As the Plaintiff has already asserted a claim for money damages in Amended Count 4 based on the same set of facts, its claim for disgorgement is duplicative and should be dismissed. *See Betz v. Blatt*, 984 N.Y.S.2d 378, 382 (2d Dep't 2014) (dismissing disgorgement claim as duplicative where the claim was "based on the same set of facts" as other causes of action for money damages and therefore "did not allege [a] distinct cause[ ] of action").

As is the case with the Plaintiff's disgorgement theory, the facts alleged in support of Amended Count 5 are also insufficient to allege a cause of action on a turnover theory pursuant to § 542 of the Bankruptcy Code. Section 542 states, in pertinent part:

> (a)    Except [in situations not relevant here], an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

> (b)    Except [in situations not relevant here], an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee . . . .

11 U.S.C. § 542(a), (b). An element of either cause of action is the lack of any dispute of the estate's interest in the property sought to be turned over. *See Penthouse Media Grp. v. Guccione (In re Gen. Media, Inc.)*, 335 B.R. 66, 76 (Bankr. S.D.N.Y. 2005) ("Section 542(a) does not apply if title [to the property of which turnover is sought] is disputed."); *Hassett v. BancOhio Nat'l Bank (In re CIS Corp.)*, 172 B.R. 748, 760 (Bankr. S.D.N.Y. 1994) (an action should be regarded as a turnover proceeding under § 542(b) "only when there is no legitimate dispute over what is owed to the debtor"). Under either section, "[i]t is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes or otherwise demand assets whose title is in

dispute." *Hirsch v. London S.S. Owners Mut. Life Ins. Ass'n Ltd. (In re Seatrain Lines, Inc.)*, 198
B.R. 45, 50 n.7 (S.D.N.Y. 1996).

On the face of the Amended Complaint, it is clear that the Plaintiff is attempting to use
Amended Count 5 to liquidate a disputed debt. (*See, e.g.*, Am. Compl. ¶¶ 30-46 (outlining
disputes with Note Buyer and Griffon over various amounts allegedly due).) Even assuming that
all of the Plaintiff's allegations in the Amended Complaint are true, Amended Count 5 simply
fails as a matter of law to state a claim for relief for turnover under § 542. *See Weiner's, Inc. v.
T.G. & Y. Stores Co.*, 191 B.R. 30, 32 (S.D.N.Y. 1996) ("[A]n action to determine the amount of
a claimed debt to the estate that is, as yet, wholly disputed and unliquidated cannot properly be
styled an action to 'turnover' estate 'property.'"); *J.T. Moran Fin. Corp. v. Am. Consol. Fin.
Corp. (In re J.T. Moran Fin. Corp.)*, 124 B.R. 931, 938 (Bankr. S.D.N.Y. 1991) ("Where . . . the
court must resolve whether or not the debt claimed is due, the action to collect the disputed funds
cannot be regarded as a turnover proceeding . . . .").

Amended Count 5 fails to state a claim for relief under a turnover theory for the
additional reason that, "[t]o the extent that a bona fide dispute exists with regard to the existence
of an identifiable fund or *res*, a proceeding to recover that *res* is not a turnover . . . unless and
until the existence, magnitude, and identity of the *res* are first established." *Acolyte Elec. Corp.
v. City of New York*, 69 B.R. 155, 171 (Bankr. E.D.N.Y. 1986). The Amended Complaint fails to
allege the existence, magnitude, and identity of the *res* of which the Plaintiff seeks turnover.

Finally, as to the Plaintiff's unjust enrichment theory, Note Buyer and Griffon argue that
the claim must be dismissed because the legal rights of Note Buyer and Griffon are governed by
contracts, and "unjust enrichment is an obligation that the laws create in the absence of an
agreement." (Third Motion ¶ 59 (quoting *Goldman v. Metropolitan Life Ins. Co.*, 5 N.Y.3d 561,

572 (2005)). The Court agrees. Even taking all of the facts alleged in the Amended Complaint as true, the Plaintiff has failed to set forth a cause of action for unjust enrichment under New York law because it is undisputed that there were written agreements governing the claims of both Note Buyer and Griffon.

"[I]n New York, it is well-recognized that an action for unjust enrichment may only be brought in the absence of a written contract relating to the same subject matter." *Northeast Indus. Dev. Corp. v. Parkstone Capital Partners, LLC (In re Northeast Indus. Dev. Corp.)*, 513 B.R. 825, 842 (Bankr. S.D.N.Y. 2014) (citing *Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 70 N.Y.2d 382, 388 (1987)); *see also IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (2009) ("Where parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded."). As stated by the New York Court of Appeals:

> The basis of a claim for unjust enrichment is that the defendant has obtained a benefit which in equity and good conscience should be paid to the plaintiff. In a broad sense, this may be true in many cases, but unjust enrichment is not a catchall cause of action to be used when others fail. It is available only in unusual situations when, *though the defendant has not breached a contract or committed a recognized tort*, circumstances create an equitable obligation running from the defendant to the plaintiff. Typical cases are those in which the defendant, *though guilty of no wrongdoing*, has received money to which he or she is not entitled. An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.

*Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012) (emphasis added) (citations and internal quotation marks omitted). As it is undisputed that the rights of Note Buyer and Griffon are governed by their respective contracts, recovery against those parties under the theory of unjust enrichment is precluded as a matter of law. *See id.*

For these reasons, the Court agrees that the Plaintiff has failed to state a cause of action under any of the legal theories pled in Amended Count 5. That claim is dismissed.

### III.    The Plaintiff Will Be Granted Leave to File the Amended Complaint *Nunc Pro Tunc* to Join Griffon as a Defendant

Finally, Griffon moves to dismiss the Amended Complaint as against it in light of the fact that the Court did not grant the Plaintiff leave to join Griffon as a defendant. By cross-motion, the Plaintiff requests that the Court grant it leave, *nunc pro tunc*, to file the Amended Complaint adding Griffon as a defendant and incorporating the Griffon Claim Objection into the Adversary Proceeding. Griffon opposes the cross-motion.

FRCP 15 provides that, except in circumstances not relevant here, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Anthony v. City of New York*, 339 F.3d 129, 138 n.5 (2d Cir. 2003) ("We have interpreted [FRCP 15] in favor of allowing . . . amendment absent a showing by the non-moving party of bad faith or undue prejudice.").

Where a proposed amendment seeks to add or drop a party, FRCP 21 applies. *See D'Attore v. New York City*, No. 10 Civ. 6646 (WHP)(JCF), 2012 WL 2952853, at *3 (S.D.N.Y. July 19, 2012) ("Where . . . a proposed amendment adds new parties, the propriety of the amendment is governed by Rule 21 . . . ."). FRCP 21 states that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. "In analyzing a request to add a party under Rule 21, the court is guided by the same standard of liberality afforded to motions to amend pleadings under Rule 15." *Smith v. Manhattan Club Timeshare Ass'n, Inc.*, 944 F. Supp. 2d 244, 256 (S.D.N.Y. 2013) (citation and internal quotation marks

omitted). Accordingly, "[w]here parties satisfy the requirements under Rule 15(a) for leave to amend, they will generally be permitted to add parties under Rule 21." *Commisso v. PricewaterhouseCoopers LLP*, No. 11 Civ. 5713 (NRB), 2012 WL 3070217, at *2 n.6 (S.D.N.Y. July 27, 2012).

The Plaintiff argues that the Griffon Claim Objection – like the Note Buyer Claim Objection – can no longer be maintained as a claim objection because Griffon is no longer the holder of a claim against the estate. (*See, e.g.*, Dec. 9, 2014 Hr'g Tr. 36:11 ("[The Court] can't have a claims objection without a claim.")). Thus, the Plaintiff argues that it will further judicial efficiency to permit the Plaintiff to join Griffon as a defendant in this Adversary Proceeding given the issues of law and fact common to both Note Buyer and Griffon. The Plaintiff contends that Griffon will not be prejudiced by the amendment because the Adversary Proceeding is still in its early stages and Griffon has been on notice of the substance of the Griffon Claim Objection for more than a year.

Griffon disagrees and requests that the cross-motion be denied. Griffon argues that it would be prejudiced by the proposed amendment because (1) the Plaintiff unduly delayed in waiting since the refinancing to attempt to join Griffon as a defendant, and (2) Griffon already agreed to accept a payoff of $3,306,385.72 in connection with the refinancing, which was less than the actual amount due of $3,421,222.15. Griffon also contends that the Court has already limited the Plaintiff's right to amend solely to claims "emanat[ing] . . . from the lender liability case." (*Id.* at 37:6-8.)

The Court finds Griffon's arguments unpersuasive. The Griffon Claim Objection has been pending since it was filed in October 2013. Griffon has been on notice of the arguments to reduce its claim since at least that time. Although the form of the Plaintiff's requested relief has

changed from the Claim Objections to the Adversary Proceeding, Griffon has not alleged that the Plaintiff is seeking different or additional relief than that set forth in the Griffon Claim Objection.

Moreover, the fact that the Court already limited the Plaintiff's leave to claims arising out of the lender liability claims against FCSB and Note Buyer is not dispositive. At the hearing held on December 9, 2014, no party raised the issue of joining Griffon as a defendant in the Adversary Proceeding, so the Court had no occasion to consider whether it would be appropriate. The Plaintiff has admitted that this was an "oversight," (Opp'n ¶ 53), and no credible suggestion has been made that the Plaintiff was acting in bad faith. Had the Court considered the fact that Griffon was in the same procedural position as Note Buyer, there is no doubt that the Court would have granted the Plaintiff leave to amend with respect to Griffon as well. *See Shariff v. Amanda Realty, Inc.*, No. 11-CV-2547 (SLT)(CLP), 2013 WL 5522444, at *5 (E.D.N.Y. Sept. 30, 2013) (granting leave to amend and add a party, *nunc pro tunc*, where "it is clear that, had plaintiff sought permission from the Court to amend the Complaint, his request would have been granted").

### Conclusion

For the foregoing reasons, the Third Motion is **DENIED** as to Counts 2, 3, and 4 of the Amended Complaint and **GRANTED** as to Count 5 of the Amended Complaint. The Plaintiff's cross-motion for leave to file the Amended Complaint *nunc pro tunc* is **GRANTED**. Counsel for the Plaintiff is directed to settle an order on notice to the Defendants.

Dated: New York, New York
      May 20, 2015

/s/ *James L. Garrity, Jr.*
The Honorable James L. Garrity, Jr.
United States Bankruptcy Judge