<u>NOT FOR PUBLICATION</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

————————————————————x

*In re:*                                                    :    Chapter 11

11 EAST 36TH LLC, *et al.*,                 :    Case No. 13-11506 (JLG)
                                                              :    (Jointly Administered)
        *Debtors*                                      :
                                                              :
————————————————————x
                                                              :
11 EAST 36TH LLC,                           :
                                                              :
        *Plaintiff*                                      :
                                                              :
*v.*                                                         :
                                                              :
FIRST CENTRAL SAVINGS BANK,       :
11 EAST 36TH NOTE BUYER LLC,       :
and GRIFFON V LLC,                         :
                                                              :
        *Defendants*                                 :
————————————————————x    Adversary No. 14-01819 (JLG)
                                                              :
11 EAST 36TH NOTE BUYER LLC and  :
GRIFFON V LLC,                               :
                                                              :
        *Third Party Plaintiffs*                  :
                                                              :
*v.*                                                         :
                                                              :
11 EAST 36TH 1 LLC,                         :
                                                              :
        *Third Party Defendant*               :
                                                              :
————————————————————x

<u>**MEMORANDUM DECISION GRANTING THE MOTION OF**</u>
<u>**11 EAST 36TH 1 LLC TO DISMISS THE THIRD PARTY COMPLAINT**</u>

<u>**A P P E A R A N C E S**</u> **:**

KRISS & FEUERSTEIN LLP
*Attorneys for 11 East 36th 1 LLC*
360 Lexington Avenue
New York, New York 10017
<u>By:</u>    Jerold C. Feuerstein, Esq.
        Greg A. Friedman, Esq.

WOODS OVIATT GILMAN LLP
*Attorneys for 11 East 36th Note Buyer LLC and Griffon V LLC*
1900 Main Place Tower
350 Main Street
Buffalo, New York 14202
By:    William F. Savino, Esq.
       Bernard Schenkler, Esq.

       -and-

BACKENROTH FRANKEL & KRINSKY LLP
*Attorneys for 11 East 36th Note Buyer LLC and Griffon V LLC*
800 Third Avenue
New York, New York 10022
By:    Mark A. Frankel, Esq.

**JAMES L. GARRITY, JR.**
**United States Bankruptcy Judge**

## <u>Introduction</u>

Before the Court is the motion (the "**Motion**") of third party defendant 11 East 36th 1

LLC (the "**Third Party Defendant**" or the "**DIP Lender**")[1] to dismiss the Third Party

Complaint (the "**Third Party Complaint**") filed by third party plaintiffs 11 East 36th Note

Buyer LLC ("**Note Buyer**") and Griffon V LLC ("**Griffon,**" together with Note Buyer, the

"**Third Party Plaintiffs**") in this adversary proceeding. By that complaint, the Third Party

Plaintiffs assert a single claim against the DIP Lender for common law indemnity and

contribution relating to Postpetition Financing (defined below) that 11 East 36th LLC and

Morgan Lofts LLC (together, the "**Debtors**") obtained from the DIP Lender and used, in part, to

satisfy the claims of the Third Party Plaintiffs. Specifically, they contend that when, in

connection with that financing, the DIP Lender accepted an assignment of the Third Party

Plaintiffs' debt and security instruments, by operation of law, the DIP Lender became a co-

---

[1]  11 East 36th 1 LLC is the designee of MRC RE Holdings LLC, which was authorized to provide postpetition financing to the Debtors in this bankruptcy case pursuant to that certain Financing Order (defined below) entered on August 6, 2014.

obligor with them as to the claims asserted in this adversary proceeding. The Third Party

Plaintiffs therefore seek contribution or indemnification from the DIP Lender to the extent they

are ultimately held liable in this proceeding.

In the Motion, the DIP Lender submits that the exculpation provision in the Financing

Order bars the Third Party Plaintiffs' claims against it as a matter of law. Alternatively, the DIP

Lender argues that allowing the Third Party Plaintiffs to seek indemnity and contribution from it

would "elevate form over substance" as the Postpetition Financing was "in essence" a new loan

to the Debtors, not an assignment of the Third Party Plaintiffs' claims to the DIP Lender.

Although the DIP Lender in fact took the Third Party Plaintiffs' debt instruments by assignment,

it contends that it did so only as an accommodation to the Debtors who were seeking to reduce

the mortgage recording taxes due on the transaction and that it did not assume any of the Third

Party Plaintiffs' liabilities. In either case, the DIP Lender argues that the Third Party Complaint

should be dismissed under Federal Rule of Civil Procedure 12(b)(6), as it fails to state a claim

upon which relief can be granted.[2]

For the reasons set forth below, the Court finds that the exculpation clause in Paragraph

23 of the Financing Order bars the assertion of claims against the DIP Lender such as those

asserted in the Third Party Complaint. Accordingly, under the doctrine of *res judicata*, the Third

Party Plaintiffs have failed to state a claim against the DIP Lender upon which relief can be

granted and the Third Party Complaint must be dismissed in its entirety. Accordingly, the Motion

is **GRANTED.**

---

[2]   Rule 12(b)(6) is applicable in this adversary proceeding pursuant to Rule 7012(b) of the Federal Rules of
Bankruptcy Procedure.

### Factual Background[3]

On May 8, 2013, the Debtors filed voluntary petitions in this Court under chapter 11 of

title 11 of the United States Code, initiating their respective bankruptcy cases. Prior to the

petition date, the Debtors were in the process of developing the Morgan Lofts condominium

project located on East 36th Street in New York City. In connection with the project, the Debtors

owned a number of condominium units including 20 residential condominium units, two ground-

floor commercial condominium units, and one cellar unit (collectively, the "**Property**").

Previously, the Property was encumbered by a $10 million note and mortgage that was held by

Note Buyer as the assignee of First Central Savings Bank ("**FCSB**"), the original lender. The

Property was also encumbered by a judgment in the approximate amount of $2.9 million that was

held by Griffon as the assignee of Chinatrust Bank ("**Chinatrust**"). During the Debtors'

bankruptcy cases, both Note Buyer and Griffon filed proofs of claim on account of their claims.

The Debtors filed objections to the proofs of claim, contending that the claims were overstated

on account of allegedly excessive legal and management fees, charges for disputed protective

advances, and overstated interest and default interest charges (collectively, the "**Claim**

**Objections**").

In February 2014, while the Claim Objections were pending, Debtor 11 East 36th LLC

(the "**Plaintiff**") commenced this adversary proceeding by filing a complaint (the "**Complaint**")

against FCSB, Note Buyer, and Mission Capital Advisors LLC ("**Mission Capital**").[4] (*See*

Compl., AP ECF No. 1.) In the Complaint, the Plaintiff alleged that, in October 2011, FCSB

---

[3]    Except as otherwise noted, references to "ECF" refer to the electronic docket maintained in the Debtors' jointly
administered chapter 11 cases, Case No. 13-11506 (JLG). References to "AP ECF" refer to the electronic docket
maintained in this adversary proceeding, Case No. 14-01819 (JLG).

[4]    The Plaintiff's claims against Mission Capital and Mission Capital's role in the transactions at issue are not
germane to the disposition of the Motion and will not be addressed herein.

breached the note and mortgage underlying its claim by unjustifiably withholding its consent to the Plaintiff's proposed sale of two of the condominium units and by thereafter declaring the note to be in default. Counts I and II of the Complaint sought to recover damages for breach of contract and breach of the implied covenant of good faith and fair dealing under New York law, while Count IV sought a declaratory judgment that Note Buyer, as the assignee of FCSB, stood in the shoes of FCSB and was therefore liable to the Plaintiff for damages sustained as a result of FCSB's wrongdoing. (*See id.* ¶¶ 30-44, 52-56.)

FCSB and Note Buyer each moved to dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court (Grossman, J.)[5] denied the motions. *See 11 E. 36th LLC v. First Cent. Sav. Bank (In re 11 E. 36th LLC)*, 2014 WL 2903660 (Bankr. S.D.N.Y. June 26, 2014). As relevant here, the Court held that Counts I and II of the Complaint properly plead claims for breach of contract and breach of the implied covenant of good faith and fair dealing, respectively. *Id.* at *3-5. The Court also held that, although Count IV was denominated as a declaratory judgment action, it sought to hold Note Buyer liable on a contractual basis as FCSB's assignee for FCSB's alleged wrongdoing. *Id.* at *5. The Court held that this claim was also properly plead. *See id.* ("To the extent that Note Buyer stands in FCSB's shoes as assignee of the Note and Mortgage Agreement, the [Plaintiff] has also adequately pled [Count IV] on a contractual theory only.").

In November 2013, the Debtors' exclusive period for filing a chapter 11 plan lapsed. *See* 11 U.S.C. § 1121(c)(3). Thereafter, on December 3, 2013, Note Buyer and Griffon, as secured

---

[5] The Debtors' bankruptcy cases were originally assigned to the Honorable James M. Peck. After Judge Peck's retirement in January 2014, the cases were temporarily reassigned to the Honorable Robert E. Grossman, sitting by designation in the Southern District of New York pursuant to an order of the Second Circuit Court of Appeals. The cases were reassigned to the undersigned on February 18, 2015.

5

creditors, filed a Joint Plan of Reorganization (the "**Creditors' Plan**") calling for the Debtors'

assets to be liquidated and for the proceeds to be used to satisfy claims and interests in

accordance with the priority scheme established under the Bankruptcy Code. (*See* Creditors'

Plan, ECF No. 58.) Pursuant to the Creditors' Plan, an auction sale of the Property was scheduled

for August 11, 2014. Prior to that time, the Debtors obtained a loan commitment and filed a

motion (the "**Financing Motion**") seeking court approval of postpetition financing (the

"**Postpetition Financing**") sufficient to allow the Debtors to satisfy Note Buyer and Griffon's

claims, exercise their right of redemption to the Property, and cancel the scheduled auction sale.

(*See* Fin. Motion ¶¶ 23-25, ECF No. 124.)

In August 2014, the Court entered the Final Order Authorizing Debtors to Obtain

Postpetition Financing and Granting Senior Security Interests and Superpriority Administrative

Expense Status Pursuant to 11 U.S.C. § 364(d) and Providing Related Relief (the "**Financing

Order**"), authorizing the Debtors to borrow up to $19 million from the DIP Lender to be used,

*inter alia*, to satisfy the claims of Note Buyer and Griffon. (*See* Fin. Order, ECF No. 159.)

Among other things, the Financing Order directed Note Buyer and Griffon "to deliver at

closing . . . satisfactions of mortgage and judgment in recordable form, as applicable, or

assignments of same in recordable form." (*Id.* ¶ 28.) At closing, the Debtors requested that Note

Buyer and Griffon assign their debt instruments and security interests to the DIP Lender in order

to minimize the Debtors' mortgage recording tax liability. It is undisputed that Note Buyer and

Griffon did so, and the Debtors and the DIP Lender entered into an Agreement of Spreader,

Consolidation, and Modification of Mortgage (the "**DIP Mortgage**") consolidating the

mortgages on the Property into a single lien in favor of the DIP Lender. *See Cutrone v. Mortg.

Elec. Regis. Sys., Inc.*, 749 F.3d 137, 140 (2d Cir. 2014) (noting that a consolidation "permits a

mortgagor to consolidate his original and refinanced mortgages any pay only the difference in mortgage recording tax between the two mortgages").

Thereafter, Note Buyer and Griffon jointly moved pursuant to Rule 54(b) of the Federal Rules of Civil Procedure[6] for reconsideration of the denial of their first motion to dismiss the Complaint (as to Note Buyer) and for denial of the Claim Objections (as to both Note Buyer and Griffon). (*See* Motion to Dismiss Advers. Proc. & Objs. to Claim, ECF No. 171, AP ECF No. 29.) According to the motion, the Complaint did not allege any independent wrongdoing by Note Buyer; instead, it sought to hold Note Buyer liable solely as the assignee of FCSB. Accordingly, since Note Buyer had then assigned its debt instruments and security interests to the DIP Lender in connection with the Postpetition Financing, Note Buyer argued that it should be dismissed from the adversary proceeding and that the DIP Lender should instead be held accountable for FCSB's conduct as FCSB's ultimate assignee. In addition, Note Buyer and Griffon sought denial of the Claim Objections on the ground that, to the extent their claims were ultimately held to be overstated or otherwise disallowed, the Debtors' recourse should be against their assignee – the DIP Lender – and not Note Buyer and Griffon.

At a hearing on December 9, 2014, Judge Grossman denied that motion, declining to revisit his denial of Note Buyer's earlier motion to dismiss. In doing so, however, he noted that Note Buyer – which had assigned its debt instruments to the DIP Lender in connection with the Postpetition Financing –no longer held a claim against the estate. Accordingly, he directed the Debtors to withdraw the objection to Note Buyer's claim, but authorized the Plaintiff to amend

---

[6] Rule 54(b) provides that "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be reviewed at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Rule 54(b) is applicable in adversary proceedings pursuant to Rule 7054 of the Federal Rules of Bankruptcy Procedure.

the Complaint to incorporate the objection into the adversary proceeding. The Plaintiff did so,

filing an amended complaint (the "**Amended Complaint**") on January 31, 2015. (*See* Am.

Compl., AP ECF No. 36.) Among other things, the Amended Complaint added Griffon as a

named defendant and alleged that FCSB, Note Buyer, and Griffon collected excessive interest on

their claims totaling more than $5.9 million and assessed other improper fees and charges

totaling more than $1.1 million. (*Id.* ¶¶ 30-40.)

In March 2015, Note Buyer and Griffon moved to dismiss the Amended Complaint

arguing, *inter alia*, that the Court did not authorize the addition of Griffon as a named defendant.

The Plaintiff opposed the motion and cross-moved for an order authorizing the filing of the

Amended Complaint as against Griffon *nunc pro tunc*. On May 20, 2015, this Court granted the

motion to dismiss in part, dismissing Count V of the Amended Complaint seeking disgorgement

and turnover of property of the estate. *See 11 E. 36th LLC v. First Cent. Sav. Bank (In re 11 E.

36th LLC)*, 2015 WL 2445075, at *10-12 (Bankr. S.D.N.Y. May 20, 2015). The Court denied the

remainder of the motion and granted the Plaintiff leave to name Griffon as a defendant *nunc pro

tunc*. *Id.* at *12-13.[7]

On June 3, 2015, Note Buyer and Griffon filed their answer to the Amended Complaint

and filed and served the Third-Party Complaint. (*See* Third Party Compl., AP ECF No. 58). In

the Third Party Complaint, Note Buyer and Griffon (*i.e.*, the Third Party Plaintiffs) seek a

judgment against the DIP Lender for contribution and indemnity for any amounts adjudicated

against them under the Amended Complaint. According to the Third Party Plaintiffs, the DIP

Lender, as the assignee of the Third Party Plaintiffs' debt obligations, became the principal

---

[7]    A detailed description of the allegations in the Amended Complaint and the substance of the motion to dismiss
and cross-motion for leave are set forth in the Court's decision of May 20, 2015. Those facts are not relevant to
the issues before the Court and will not be addressed herein.

obligee of those obligations and a co-obligor with the Third Party Plaintiffs as a matter of law.

(*Id.* ¶ 21.) Thus, to the extent the Third Party Plaintiffs are held liable to the Plaintiff, they

contend that they are entitled to the common law rights of indemnity and contribution from the

DIP Lender. (*Id.* ¶¶ 22-23.) In lieu of answering the Third Party Complaint, the DIP Lender filed

the Motion now before the Court. (*See* Motion, AP ECF No. 68.)

## Legal Standards

Rule 12(b)(6) permits a defendant to seek dismissal of a complaint where the complaint

"fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing

a motion under Rule 12(b)(6), the court must "accept as true all factual allegations [in the

complaint] and draw from them all reasonable inferences," but should not "credit conclusory

allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d

82, 94 (2d Cir. 2013). To survive the motion, the complaint "must contain sufficient factual

matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial

plausibility," and is therefore sufficient to survive a motion to dismiss, "when the pleaded factual

content allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* "[A] well-pleaded complaint may proceed even if it strikes a savvy

judge that actual proof of th[e] facts is improbable, and 'that a recovery is very remote and

unlikely.'" *Twombly*, 550 U.S. at 557 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Accordingly, "the issue is not whether a plaintiff is likely to prevail ultimately, but whether the

claimant is entitled to offer evidence to support the claims." *Chance v. Armstrong*, 143 F.3d 698,

701 (2d Cir. 1998) (quoting *Branham v. Meachum*, 77 F.3d 626, 628 (2d Cir. 1996)).

## Jurisdiction

As an initial matter, this Court must determine the scope of its jurisdiction to resolve the claims asserted in the Third Party Complaint. "The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995). Section 1334 of title 28 of the United States Code vests district courts with "original and exclusive jurisdiction of all cases arising under title 11." 28 U.S.C. § 1334(a). That section also vests district courts with "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." *Id.* § 1334(b). District courts may "refer" any or all of these proceedings "to the bankruptcy judges for the district." *Id.* § 157(a). The United States District Court for the Southern District of New York has done so. *See* Amended Standing Order of Reference, No. M10-468, 12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012) (Preska, C.J.).

Once a proceeding has been referred, "[t]he manner in which a bankruptcy judge may act . . . depends on the type of proceeding involved." *Stern v. Marshall*, 564 U.S. ____, 131 S. Ct. 2594, 2603 (2011). In core proceedings[8] that arise under title 11 or arise in cases under title 11, bankruptcy courts may "hear and determine" the matter and may "enter appropriate orders and judgments." 28 U.S.C. § 157(b)(1). By contrast, in noncore proceedings that are merely "related to" a case under title 11, bankruptcy courts must normally "submit proposed findings of fact and conclusions of law to the district court." *Id.* § 157(c)(1). In those matters, "any final

---

[8] "To satisfy constitutional limitations on the subject matter jurisdiction of the Article I bankruptcy courts, bankruptcy jurisdiction is divided into 'core' and 'noncore' jurisdiction." *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 674 (S.D.N.Y. 2011). Core jurisdiction encompasses proceedings which "invoke a substantive right provided by title 11" or that "would have no existence outside of the bankruptcy case." *J.T. Moran Fin. Corp. v. Am. Consol. Fin. Corp. (In re J.T. Moran Fin. Corp.)*, 124 B.R. 931, 937 (S.D.N.Y. 1991). Noncore or "related to" jurisdiction encompasses proceedings that are not core proceedings but nevertheless "might have a 'conceivable effect' on the bankrupt estate." *Publicker Indus., Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 114 (2d Cir. 1992).

10

order or judgment shall be entered by the district judge after considering the bankruptcy judge's

proposed findings and conclusions and after reviewing de novo those matters to which any party

has timely and specifically objected." *Id.* However, even in noncore matters, a bankruptcy court

may enter final orders and judgments with the consent of all parties involved. *See id.* § 157(c)(2);

*Messer v. Bentley Manhattan Inc. (In re Madison Bentley Assocs., LLC)*, 474 B.R. 430, 436

(S.D.N.Y. 2012) ("[A] bankruptcy court may finally adjudicate even noncore claims with the

parties' consent.").

　　Here, the claims asserted in the Third Party Complaint do not implicate the Court's core

jurisdiction. The Debtors are not parties to the Third Party Complaint, and the indemnity and

contribution claims that form the basis of the complaint "have little or no relation to the

Bankruptcy Code, do not arise under the federal bankruptcy law, and would exist in the absence

of the bankruptcy case." *J. Baranello & Sons, Inc. v. Baharestani (In re J. Baranello & Sons,*

*Inc.)*, 149 B.R. 19, 24 (Bankr. E.D.N.Y. 1992). However, the claims asserted in the Third Party

Complaint do implicate the Court's noncore jurisdiction as matters that are "related to" the

bankruptcy case based on the Debtors' contractual agreement to indemnify the DIP Lender

against claims arising out of the Postpetition Financing.

　　It is well settled that a bankruptcy court's noncore jurisdiction will extend to litigation

between nondebtors so long as the debtor has an obligation to indemnify one of the parties to the

litigation. *See, e.g.*, *IIG Capital LLC v. Wollmuth Maher & Deutsch, LLP (In re Amanat)*, 338

B.R. 574, 580 (Bankr. S.D.N.Y. 2005) ("[A] bankruptcy court has 'related to' jurisdiction over

nondebtor litigation if the estate is obligated to indemnify or contribute to the losing party.");

*Blackacre Bridge Capital LLC v. Korff (In re River Ctr. Holdings, LLC)*, 288 B.R. 59, 65 (Bankr.

S.D.N.Y. 2003) ("If the obligation of the debtor to indemnify [one of the parties to the litigation]

is 'contractual and absolute,' courts have held that the third party litigation is related to the

bankruptcy case. Indeed, even if the obligation is not contractual and absolute, 'related to'

jurisdiction exists if the disputed or conditional indemnity claim has a 'reasonable legal basis.'"

(citations omitted)); *Masterwear Corp. v. Rubin Baum Levin Constant & Friedman (In re

Masterwear Corp.)*, 241 B.R. 511, 516 (Bankr. S.D.N.Y. 1999) ("The bankruptcy court's

noncore jurisdiction . . . extends to a proceeding whose outcome may have any 'conceivable

effect' on the debtor's estate . . . . In litigation involving nondebtors, 'relatedness' often turns on

the estate's obligation to indemnify the losing party." (citations omitted)); *see also N.Y.C. Emps.'

Ret. Sys. v. Ebbers (In re WorldCom, Inc. Sec. Litig.)*, 293 B.R. 308, 324 (S.D.N.Y. 2003) ("The

contribution claims have the potential to alter the distribution of assets among the estate's

creditors . . . . The potential alteration of the liabilities of the estate and change in the amount

available for distribution to other creditors is sufficient to find that litigation among nondebtors is

'related to' the bankruptcy proceeding.").

In this case, Section 36 of the DIP Mortgage executed by the Debtors and the DIP Lender

in connection with the Postpetition Financing provides as follows:

> Mortgagor [*i.e.*, the Debtors] shall protect, defend, indemnify and save harmless
> Mortgagee [*i.e.*, the DIP Lender] from and against all liabilities, obligations,
> claims, damages, penalties, causes of action, costs and expenses (including
> without limitation reasonable attorneys' fees and expenses), imposed upon or
> incurred by or asserted against Mortgagee by reason of . . . ownership of this
> Mortgage, the Mortgaged Property or any interest therein . . . . Any amounts
> payable to Mortgagee by reason of the application of this Section 36 shall become
> immediately due and shall bear interest at the Default Rate from the date loss or
> damage is sustained by Mortgagee until paid. The obligations of Mortgagor under
> this Section 36 shall survive any termination, satisfaction, assignment, entry of
> judgment of foreclosure or delivery of a deed in lieu of foreclosure of this
> Mortgage.

(DIP Mortg. § 36, ECF No. 182). Based on the Debtors' agreement in Section 36 to indemnify

the DIP Lender against any liabilities arising from the "ownership of th[e] Mortgage," the Court

12

concludes that the resolution of the Third Party Complaint may have a "conceivable effect" on the Debtors' estate to the extent the DIP Lender is ultimately held liable to the Third Party Plaintiffs. *See, e.g.*, *In re Brentano's, Inc.*, 27 B.R. 90, 91-92 (Bankr. S.D.N.Y. 1983) (litigation between third parties had a conceivable effect on debtor's estate based on debtor's contractual obligation to indemnify one party), *rev'd on other grounds*, 36 B.R. 90 (S.D.N.Y. 1984). The Court does not need to determine – and does not determine – that the Debtors will, in fact, be liable to indemnify the DIP Lender if a judgment is entered in favor of the Third Party Plaintiffs. It is sufficient for jurisdictional purposes that the Debtors have agreed to indemnify the DIP Lender and may ultimately be held liable on that indemnity. *See Amanat*, 338 B.R. at 580 ("A court has 'related to' jurisdiction over a contractual and absolute obligation to indemnify even if the debtor's liability is not definite.").

In light of the foregoing, the Court concludes that the claims asserted in the Third Party Complaint are "related to" the Debtors' bankruptcy cases and fall within the Court's noncore jurisdiction. Moreover, by virtue of the parties' consent to this Court's exercise of jurisdiction in this proceeding,[9] the Court is satisfied that it has the authority to enter final orders and judgments with respect to the Third Party Complaint. *See* 28 U.S.C. § 157(c)(2) ("[T]he district court, *with the consent of all the parties to the proceeding*, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments . . . ." (emphasis added)).

---

[9]   Both the Third Party Plaintiffs and the DIP Lender have consented to the entry of final orders and judgments by this Court. (*See* Letter of Greg Friedman dated Dec. 16, 2015, AP ECF No. 88 ("[T]his letter shall confirm Third Party Defendant 11 East 36th 1 LLC's consent to the jurisdiction of this Court to enter a final order."); Letter of William F. Savino dated Dec. 30, 2015, AP ECF No. 89 ("This will confirm that the consent to subject matter jurisdiction . . . is on behalf of both third party plaintiffs . . . .").)

### Discussion

Having determined that the Court has jurisdiction and authority to enter final orders and judgments with respect to the Third Party Complaint, the Court turns to the merits of the Motion. As set forth above, the Third Party Plaintiffs seek judgment against the DIP Lender for common law indemnity and contribution for any amounts for which they are held liable to the Debtors. They allege that by virtue of the assignment of their debt instruments to the DIP Lender, the DIP Lender "became the principal obligee of the respective debts . . . and a co-obligor with [the Third Party Plaintiffs] by operation of law." (Third Party Compl. ¶ 21.) As a result, to the extent they are ultimately held liable to the Debtors, the Third Party Plaintiffs contend that they are entitled to the common law rights of contribution and indemnity from the DIP Lender. (*Id.* ¶ 22.)

As noted previously, in the Motion, the DIP Lender argues two alternative grounds for dismissal of the Third Party Complaint. Primarily, the DIP Lender contends that the Financing Order, and particularly the broad exculpation provisions contained in Paragraph 23 of that order, bar the claims asserted by the Third Party Plaintiffs under principles of *res judicata*. (*See* Motion ¶¶ 24-26.) In the alternative, the DIP Lender contends that, rather than an assignment of debt instruments from the Third Party Plaintiffs to the DIP Lender, the Postpetition Financing was "in essence" a new loan. (*Id.* ¶ 28.) By treating it as an assignee rather than a new, separate lender, the DIP Lender argues that the Third Party Plaintiffs are attempting to "elevate form over substance." (*Id.* ¶ 27.) According to the DIP Lender, the only reason that it took an assignment from the Third Party Plaintiffs in lieu of a satisfaction of their debt instruments was to obtain for the Debtors a savings in mortgage recording tax and that, by doing so, it did not agree to assume any of the Third Party Plaintiffs' liabilities. (*Id.* ¶ 29.)

The Court first considers the DIP Lender's alternative argument that the Postpetition Financing was, "in essence," a new loan rather than an assignment of existing indebtedness from the Third Party Plaintiffs to the DIP Lender.[10] According to the DIP Lender, § 275 of the New York Real Property Law, which is incorporated by reference into the assignment, specifically contemplates that underlying debt and security instruments may be assigned in connection with the "refinancing of an existing loan with a new lender." *See* N.Y. Real. Prop. Law § 275(2)(c).[11] In such cases, the DIP Lender contends that imposing any sort of successor liability on the assignee would "frustrate the purposes" of § 275(2)(c) and would require new lenders to obtain releases from assignors in connection with a refinancing, "which is not customary." (Reply ¶ 25.)

The Court finds that consideration of that argument is outside the scope of a Rule 12(b)(6) motion. "[T]he office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). The "new lender" argument turns on the DIP Lender's interpretation of the loan documents and matters outside the Third

---

[10] As support for its contention that the Postpetition Financing was a new loan rather than an assignment, the DIP Lender refers to the Fourth Amended Joint Disclosure Statement (the "**Disclosure Statement**") approved by the Court in June 2015, which characterizes the transaction as follows:

> On or about August 11, 2014, the Debtors refinanced their disputed obligations to [the Third Party Plaintiffs]. The result was two separate loans each secured by, *inter alia*, mortgages on the Property. The first loan was from [the DIP Lender] in the amount of $17.1 million . . . . The refinance, which was approved by Order of the Court, not only satisfied the existing secured obligations in their disputed amounts, but preserved the Debtors' claims against FCSB [and the Third Party Plaintiffs], which are being prosecuted in the Adversary Proceeding.

(Discl. Stmt. ¶ I(A)(10), ECF No. 237 (footnote omitted).)

[11] Section 275 of the Real Property Law generally requires that a "certificate of discharge of mortgage" be recorded "[w]henever a mortgage upon real property is due and payable, and the full amount of principal and interest due on the mortgage is paid." N.Y. Real. Prop. Law § 275(1). However, § 275(2) provides that "the full amount of principal and interest due on a mortgage shall not be considered to be paid whenever such mortgage continues to secure a bona fide debt and an enforceable lien continues to exist, such as may occur" with "the refinancing of an existing loan with a new lender." *Id.* § 275(2)(c).

Party Complaint, including what is "customary" in financings like the Postpetition Financing and

whether that financing was "in essence a new loan" that "refinanced the secured loans held by

the Third Party Plaintiffs." Accepting all of the factual allegations in the Third Party Complaint

as true and drawing all reasonable inferences in favor of the Third Party Plaintiffs, *see Rothstein*,

708 F.3d at 94, the Court cannot simply accept the DIP Lender's characterization of the

transaction and disregard that of the Third Party Plaintiffs as "form over substance," especially

when the well-pleaded allegations in the Third Party Complaint establish that the transaction was

an assignment from the Third Party Plaintiffs to the DIP Lender. (*See, e.g.*, Third Party Compl. ¶

15 ("In connection with the closing of [the Postpetition Financing], the [Debtors] requested, and

[the Third Party Plaintiffs] agreed, to assign their respective debts and loan documents to the DIP

Lender rather than extinguishing their respective debts upon payment.").)

By contrast, the Court can consider the DIP Lender's primary argument – whether the

doctrine of *res judicata* precludes the Third Party Plaintiffs' claims – under Rule 12(b)(6). *See*

*TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014) ("A court may consider a

*res judicata* defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to

the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate

for judicial notice."). "Under the doctrine of *res judicata* . . . , '[a] final judgment on the merits

of an action precludes the parties or their privies from relitigating issues that were or could have

been raised in that action.'" *St. Pierre v. Dyer*, 208 F.3d 394, 399 (2d Cir. 2000) (quoting

*Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)) (alteration in original). The

doctrine "applies to preclude later litigation if [an] earlier decision was (1) a final judgment on

the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or

their privies, and (4) involving the same cause of action." *Anaconda-Ericsson, Inc. v. Hessen (In re Teltronics Servs., Inc.)*, 762 F.2d 185, 190 (2d Cir. 1985).

It is well settled that the doctrine of *res judicata* applies in bankruptcy cases. *See EDP Med. Comput. Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (noting that the doctrine "applies with full force to matters decided by the bankruptcy courts"). Indeed, the "finality interests" underlying the doctrine "are particularly important in the bankruptcy context, where numerous contending claims are gathered, jostle, and are determined and released." *Corbett v. MacDonald Moving Servs., Inc.*, 124 F.3d 82, 91 (2d Cir. 1997). Courts have applied principles of *res judicata* to orders authorizing postpetition financing in bankruptcy cases. *See, e.g.*, *Cobalt Ventures, LLC v. Bank of Am. (In re Brooks Sand & Gravel, LLC)*, 361 B.R. 477, 479-80 (Bankr. W.D. Ky. 2007) (postpetition financing order entitled to *res judicata* effect in subsequent adversary proceeding against lender); *Fox v. Cong. Fin. Corp. (In re Target Indus., Inc.)*, 328 B.R. 99, 116 (Bankr. D.N.J. 2005) (same).

Here, the DIP Lender contends that the exculpation provisions contained in the Financing Order, which are binding on the Third Party Plaintiffs,[12] preclude the indemnity and contribution claims asserted in the Third Party Complaint under principles of *res judicata*. Paragraph 23 of the Financing Order, entitled "Exculpation," provides:

> Nothing in this Order, the DIP Agreement or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender of any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operations of [their] business or in connection with [their] restructuring efforts.

---

[12] Paragraph 13 of the Financing Order provides that "[t]he DIP Agreement and the provisions of this Order shall be binding upon all parties in interest in the Case . . . and shall inure to the benefit of the DIP Lender and the Debtors and their respective successors and assigns." (Fin. Order ¶ 13.)

(Fin. Order ¶ 23.) According to the DIP Lender, both the Postpetition Financing and the claims asserted in this adversary proceeding, standing alone, "represent the pre- or postpetition activities of the Debtors in the operations of [their] business, or in connection with [their] restructuring efforts." (Motion ¶ 24.) Moreover, the DIP Lender contends that the documents effecting the assignment of debt instruments from the Third Party Plaintiffs to the DIP Lender are part and parcel of the Debtors' restructuring efforts because they are specifically referenced in the Financing Order.[13] (*Id.*) Accordingly, the DIP Lender argues that it may not be held liable to the Third Party Plaintiffs for common law contribution or indemnity as set forth in the Third Party Complaint.

The Third Party Plaintiffs do not dispute that they are "parties in interest" bound by the Financing Order, but they deny that the order bars their claims. Although they acknowledge that *res judicata* bars a claim if "an independent judgment in a separate proceeding would 'impair or destroy rights or interests established by the judgment entered in the first action,'" *Sure-Snap Corp. v. State St. Bank & Trust Co.*, 948 F.2d 869, 874 (2d Cir. 1991) (quoting *Herendeen v. Champion Int'l Corp.*, 525 F.2d 130, 133 (2d Cir. 1975)), they contend that their claims are not precluded because they are not challenging any rights established under the Financing Order. (Opp'n 9.) Focusing on Recital E in the Financing Order,[14] the Third Party Plaintiffs contend

---

[13] As set forth above, paragraph 28 of the Financing Order directs the Third Party Plaintiffs to "deliver at closing . . . satisfactions of mortgage and judgment in recordable form, as applicable, *or assignments of same in recordable form*." (Fin. Order ¶ 28 (emphasis added).)

[14] Recital E, entitled "Need for Additional Postpetition Financing," reads as follows:

> The Debtors have an immediate need to obtain the [Postpetition Financing] . . . . The [Creditors' Plan] provides an auction sale of the Property on August 11, 2014, with the express contemplation of the Debtors' right to raise sufficient funds to pay [the Third Party Plaintiffs'] claims in full in such amounts as may be allowed and/or determined by the Bankruptcy Court, before the sale date, thereby allowing the Debtors to cancel the sale, as would be their right under New York state law . . . . The Debtors now require the [Postpetition Financing] to pay the [Third Party Plaintiffs] . . . and avoid the need to sell the Property. Without the [Postpetition Financing], a forced liquidation of the Debtors' assets would ensue. The purpose of the [Postpetition Financing]

that all the order adjudicated was the Debtors' "immediate need" to obtain the Postpetition

Financing so as to avoid the scheduled auction sale of the Property. (*Id.* at 10 (quoting Fin. Order

at Recital E).) According to the Third Party Plaintiffs, the Financing Order "neither addressed

nor adjudicated" the merits of this adversary proceeding "[n]or any issues raised by assignment

of FCSB's debt." (*Id.*)

The Third Party Plaintiffs also contend that, contrary to the DIP Lender's assertions, the

exculpation provisions of the Financing Order are not intended to protect the DIP Lender from

*any* liability arising from the Debtors' operations or restructuring efforts, but rather are intended

only to preclude challenges to the Postpetition Financing itself or to "alter-ego type claims" that

attempt to assess liability against the DIP Lender for the acts or conduct of the Debtor. (*Id.* at 2,

16-17.) According to the Third Party Plaintiffs, the indemnification and contribution claims

asserted in the Third Party Complaint are not within the types of claims precluded by Paragraph

23 of the Financing Order and therefore are not barred by principles of *res judicata*. (*Id.* at 17.)

The Third Party Plaintiffs maintain that their interpretation of Paragraph 23 of the Financing

Order is corroborated by Paragraph 22 of the order, which provides that the DIP Lender "shall

not be deemed to be in control of the operations of the [Debtors]" by virtue of the Postpetition

Financing.[15]

---

will thus be to preserve, maintain and enhance the going concern value of the Debtors, as well as
to allow the Debtors to reorganize their affairs and file a confirmable plan of reorganization which
will provide for 100% repayment of all allowed claims of the Debtors.

(Fin. Order at Recital E.)

[15] Paragraph 22 of the Financing Order provides:

By consenting to this Order, by making advances, loans or extending financial accommodations of
any type, kind or nature under this order or by administering the loans made hereunder, the DIP
Lender shall not be deemed to be in control of the operations of the [Debtors] or to be acting as a
"responsible person," "managing agent" or "owner or operator" . . . with respect to the operation
or management of the [Debtors].

The Court finds no merit to the Third Party Plaintiffs' contentions. The recitals in the Financing Order do not limit the import of the operative provisions of that order. The plain, literal, and unambiguous language of Paragraph 23 of the order precludes the imposition on the DIP Lender of "any liability for any claims" related to the Debtors' restructuring efforts. (Fin. Order ¶ 23.) Nothing in Paragraph 23 limits the scope of the exculpation to challenges to the Postpetition Financing or "alter-ego type claims" as suggested by the Third Party Plaintiffs. Paragraph 22 of the order is intended to complement, not to limit, the exculpation of the DIP Lender provided for by Paragraph 23.

As the contribution and indemnity claims asserted in the Third Party Complaint arise out of the documents effecting the transfer of debt instruments to the DIP Lender, the Court finds that those claims are integrally related to the Postpetition Financing and stem from the postpetition activities of the Debtors in connection with their restructuring efforts. Accordingly, the Court agrees with the DIP Lender that a judgment for the Third Party Plaintiffs on the claims would impair the DIP Lender's rights under the exculpation provisions of Paragraph 23 of the Financing Order. Thus, the claims are barred by *res judicata*.

The Third Party Plaintiffs cite to several cases where, "under the circumstances of those decisions," an order or judgment did not bar a later claim on *res judicata* grounds. For example, in *Broadway City*, the bankruptcy court held that the doctrine of *res judicata* did not prohibit a trustee from seeking to avoid a secured creditor's lien despite the fact that a prior "so ordered" stipulation in the case had acknowledged the validity of the lien. *See Geltzer v. Gametech Inv'rs LLC (In re Broadway City, LLC)*, 358 B.R. 628, 635-36 (Bankr. S.D.N.Y. 2007). In that case, the court grounded its decision on the fact that three of the four elements of *res judicata* had not

---

(Fin. Order ¶ 22.)

been satisfied: the "so ordered" stipulation was not a final judgment on the merits, the trustee was neither a party to the stipulation nor in privity with any of the parties, and the avoidability of the lien – as opposed to its validity – had not been adjudicated in connection with the stipulation. *Id. Broadway City* is inapposite in this case where all four of the elements for *res judicata* have been satisfied: the Financing Order is a final judgment on the merits, this Court had jurisdiction to enter the order, the order involved and was binding on the same parties as this proceeding, and the order governs the same claims at issue here.

The Third Party Plaintiffs also cite *Tokio Marine* as a case in which an order or judgment did not prohibit the subsequent assertion of a cause of action under principles of *res judicata. See Tokio Marine & Nichido Fire Ins. Co. v. Canter*, 2009 WL 2461048 (S.D.N.Y. Aug. 11, 2009). In that case, after the parties to a personal injury suit had settled the action by entering into a stipulation of discontinuance with prejudice, the insurer who had paid the settlement brought a separate indemnification action against its codefendants. The codefendants sought to dismiss the indemnification action, arguing that the doctrine of *res judicata* barred the assertion of any claims "that could have been . . . asserted as crossclaims in the prior personal injury action." *Id.* at *2. The court disagreed, holding that the clear intent of the stipulation of discontinuance was to "preclude relitigation of [the plaintiff's] cause of action in a subsequent suit," not to preclude the insurer from seeking indemnification from its codefendants. *Id.* at *7 ("As the [s]tipulation neither expressly nor impliedly disposed of [the insurer's] indemnification claims, the present action is not barred by *res judicata*."). *Tokio Marine* is plainly distinguishable from this case, as the Financing Order here clearly exculpates the DIP Lender from *any* liability for *any* claims relating to the Debtors' restructuring efforts.[16]

---

[16] The Court has considered the remaining cases cited by the Third Party Plaintiffs in support of their arguments against dismissal. Some of those cases, such as *Factory 2-U* and *Mariner Post-Acute Network*, are distinguishable

Separate and apart from their construction of the Financing Order, the Third Party

Plaintiffs contend that, at a prior hearing in this case, Judge Grossman impliedly recognized that

the DIP Lender could be held liable to the Third Party Plaintiffs to the extent the Third Party

Plaintiffs were ultimately held liable to the Debtors in the adversary proceeding.[17] According to

the Third Party Plaintiffs, Judge Grossman recognized that a third party claim against the DIP

Lender was "inevitable" and, by not dismissing the Debtors' claims against the Third Party

Defendants, implicitly blessed such a claim. (Opp'n 6-7.) The Court does not agree. The DIP

Lender was not represented by counsel during the hearing referred to by the Third Party

Plaintiffs, and no party who was present at the hearing addressed the exculpation provisions of

the Financing Order. Judge Grossman's observations at the hearing regarding the possibility that

---

on grounds similar to *Broadway City* and *Tokio Marine*. *See Dollar Tree Stores, Inc. v. Bayless Inv. & Trading Co. (In re Factory 2-U Stores, Inc.)*, 2010 WL 3322448, at *6 (Bankr. D. Del. Aug. 20, 2010) (*res judicata* not applicable where claim at issue did not involve the same cause of action as prior court order); *NovaCare Holdings v. Mariner Post-Acute Network, Inc. (In re Mariner Post-Acute Network)*, 267 B.R. 46, 54 (Bankr. D. Del. 2001) (same). Others are simply inapplicable to this case. *See Katzman v. Helen of Troy Tex. Corp.*, 2013 WL 325562, at *20 (S.D.N.Y. Jan. 28, 2013) (holding that a claim for indemnification is not a compulsory counterclaim within the scope of Rule 13(a) of the Federal Rules of Civil Procedure).

[17] The Third Party Plaintiffs cite to a colloquy among the Court, Debtors' counsel (Mr. Pasternak) and counsel for the Third Party Plaintiffs (Mr. Frankel) at a hearing on December 9, 2014:

THE COURT: If I allow the lender liability suit, don't [the Third Party Plaintiffs] implead [the DIP Lender]?

MR. FRANKEL: Yes, Your Honor, based upon the Court's opinion denying our dismissal motion [*i.e.*, Judge Grossman's June 26, 2014 decision]. The reason it was denied was because we had vicarious liability as assignee, not because we did anything. We stood in the shoes of –

THE COURT: So [the Debtors are] going to end up suing, in a sense, [their] own mortgagee, [the DIP Lender]?

MR. PASTERNAK: Well he can't, you can't implead – under what – [the DIP Lender] did not indemnify him.

THE COURT: He can argue as a contractual relationship –

MR. PASTERNAK: No, in that assignment there's no indemnification.

THE COURT: Well when you get to make the rulings we'll make that as a conclusion.

(Dec. 9, 2014 Hr'g Tr. 22:19-23:9, ECF No. 218.)

the Third Party Plaintiffs would assert an indemnification claim against the DIP Lender do not

equate to a finding by the Court that such a claim would survive a motion to dismiss based on the

terms of those exculpation provisions.[18]

Finally, the Third Party Plaintiffs contend that that the Court should narrowly construe

Paragraph 23 of the Financing Order so as to limit the exculpation "to those claims within the

contemplation of the parties at the time" of the order. (Opp'n 17 (quoting *T-Bone Rest. LLC v.*

*Gen. Elec. Capital Corp. (In re Glazier Grp. Inc.)*, 2012 WL 6005764, at *4 (Bankr. S.D.N.Y.

Nov. 30, 2012).) According to the Third Party Plaintiffs, the exculpation language should not be

given significant weight because it was a "creation of counsel" that was not "identified . . . as a

substantive issue" in the Debtors' motion papers seeking approval of the Postpetition Financing.

(*Id.* at 18.) The Court is not persuaded.

As a threshold matter, the Court notes that the Third Party Plaintiffs filed a written

objection to the terms of the proposed Financing Order on August 1, 2014. (*See* Obj. to Proposed

DIP Fin. Order, ECF No. 154.) Aside from the fact that the Third Party Plaintiffs failed to

specifically object to the exculpation language in the order at that time, the Third Party Plaintiffs'

own counter-proposed Financing Order that was submitted with their objection contained a

substantially identical exculpation provision in favor of the DIP Lender. (*Compare* Fin. Order

¶ 23 *with* Counter-Proposed Fin. Order ¶ 22.[19]) The Third Party Plaintiffs cannot now be heard to

---

[18] The Third Party Plaintiffs also rely on Judge Grossman's refusal to dismiss the Debtors' claims against them pursuant to the contractual indemnity provision in Section 5 of the promissory note between the Debtors and FCSB as evidence that their claims against the DIP Lender should not be dismissed. This is not persuasive. Judge Grossman did not rule on the import of the contractual indemnity provision at the December 9 hearing. Indeed, the underlying promissory note was not introduced into evidence at the hearing, and had not even been mentioned at the time the cited colloquy among the Court and counsel had taken place.

[19] To be certain, the language of the exculpation provisions is identical but for the replacement of the term "DIP Agreement" with "Commitment Letter financing" in the counter-proposed order.

complain about the breadth of exculpation language which they themselves included in a proposed order submitted to the Court.[20]

Moreover, the Third Party Plaintiffs cannot realistically argue that the claims at issue in this adversary proceeding were not "within the contemplation of the parties" at the time the Financing Order was entered. As the court acknowledged in *Target Industries*, principles of *res judicata* will bar a party from asserting a claim that is released by a final order if the party knew of the claim and failed to "at least highlight [its] existence" prior to entry of the order. *See Fox v. Cong. Fin. Corp. (In re Target Indus., Inc.)*, 328 B.R. 99, 116 (Bankr. D.N.J. 2005) ("Given the broad release contained within the Final Financing Order, in the event that the Debtors held any claim against Congress arising out of their prepetition relationship, it would have been patently unreasonable not to bring such claims, or at least highlight their existence, prior to entry of the Final Financing Order. Therefore, the Trustee is barred from now raising any claim based on the prepetition lending relationship between Congress and the Debtors.").

In this case, at the time the Financing Order was entered, this adversary proceeding had been pending for six months. Given that both the proposed Financing Order and the Third Party Plaintiffs' counter-proposed Financing Order exculpated the DIP Lender from "any liability for any claims" in connection with the Debtors' restructuring efforts, it was patently unreasonable for the Third Party Plaintiffs to not have at least highlighted the existence of their potential claims against the DIP Lender at the time the order was entered. Since the Third Party Plaintiffs

---

[20] The Third Party Plaintiffs have not contended that the exculpation provision of the Financing Order, as written, is impermissibly overbroad. *See In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 266-69 (Bankr. S.D.N.Y. 2007) (discussing the permissible scope of exculpation provisions). Although that issue has not been raised in connection with the Motion, the Court notes that the exculpation language in Paragraph 23 is appropriately tailored to protect the DIP Lender from inappropriate litigation and is consistent with case law in this district approving the exculpation of entities that "must be indemnified by the estate with respect to their services," including "lenders to the estate." *Id.* at 268.

chose neither to do so nor to object to the exculpation language in the Financing Order, they may not argue their way around the effect of that language now.

## Conclusion

While "determining the parameters of litigation in bankruptcy cases so as to apply the doctrine of *res judicata* is often difficult," *NovaCare Holdings, Inc. v. Mariner Post-Acute Network, Inc. (In re Mariner Post-Acute Network, Inc.)*, 267 B.R. 46, 53 (Bankr. D. Del. 2001), that is simply not the case here. The Financing Order, a final order of this Court, protects the DIP Lender from any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their business or in connection with their restructuring efforts. As relevant here, that exculpation provision includes the claims asserted by the Third Party Plaintiffs against the DIP Lender. For the reasons stated, the Third Party Complaint fails to state a claim against the DIP Lender upon which relief can be granted. Accordingly, the Third Party Complaint is dismissed in its entirety. The DIP Lender is directed to settle an order consistent with this ruling on seven days' notice.

Dated: New York, New York
        January 12, 2016


                                    /s/ *James L. Garrity, Jr.*
                                    JAMES L. GARRITY, JR.
                                    United States Bankruptcy Judge